UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

TRACY R. RAY,                        )
                                     )
        Plaintiff,                   )
                                     )    No. 1:11-cv-211
v.                                   )
                                     )    *Mattice / Lee*
COMMISSIONER OF SOCIAL SECURITY,     )
                                     )
        Defendant.                   )

## REPORT AND RECOMMENDATION

Plaintiff Tracy Ray brought this action pursuant to 42 U.S.C. §§ 405(g) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her supplemental security income ("SSI") and disability insurance benefits ("DIB"). Plaintiff has moved for judgment on the pleadings, and Defendant has moved for summary judgment [Docs. 13, 15]. Plaintiff alleges the Administrative Law Judge ("ALJ") failed to consider the entire record because he did not discuss the evidence submitted after Plaintiff's hearing. For the reasons stated below, I **RECOMMEND** that (1) Plaintiff's motion for judgment on the pleadings [Doc. 13] be **DENIED**; (2) the Commissioner's motion for summary judgment [Doc. 15] be **GRANTED**; and (3) the decision of the Commissioner be **AFFIRMED**.

**I.    ADMINISTRATIVE PROCEEDINGS**

Plaintiff initially filed her applications for SSI and DIB on February 26, 2009, alleging disability as of July 18, 2008 (Transcript ("Tr.") 104-08). Plaintiff's claim was denied initially and upon reconsideration and she requested a hearing before an ALJ (Tr. 8, 37-44, 48-55). The hearing was held on May 3, 2010, and Plaintiff was represented by an attorney during the hearing (Tr. 9-23). The ALJ issued his decision on July 2, 2010 and determined Plaintiff was not disabled because there were jobs in significant numbers in the national economy that Plaintiff could perform (Tr. 25-33).

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final, appealable decision of the Commissioner (Tr. 1-3). Plaintiff timely filed the instant action on August 16, 2011 [Doc. 2].

## II.    FACTUAL BACKGROUND

### A.    Education and Background

Plaintiff was 42 at the date of the hearing and the ALJ's decision (Tr. 22). She had graduated high school, but noted she was in a special class for all academic courses (Tr. 134). Plaintiff testified she was pushed down a flight of stairs in 1997 and fractured her left tibia and fibula, which led to multiple surgeries and skin grafts (Tr. 15). Plaintiff worked part-time for years after this incident (Tr. 15-16). Plaintiff testified that she had previously worked as a housekeeper and a fast food worker; as a housekeeper in hotels she cleaned rooms, made beds, dusted, vacuumed, cleaned bathrooms, and did a lot of walking up and down stairs, moving, and bending (Tr. 12). In her fast food jobs, she worked to keep the salad bars full, which involved a lot of walking to and from the salad bar (Tr. 13).

Plaintiff stopped working as of July 18, 2008, because her knee had been causing her many problems and she slipped and fell, needing treatment (Tr. 14). Plaintiff was out of work for a week per doctor's orders, and when she returned to work, the pain and swelling were too severe to continue working (Tr. 14). Plaintiff testified that in May 2008, she went to Erlanger Hospital where x-rays were taken, and she received medication (Tr. 16). Plaintiff returned to the emergency room sporadically, and the doctors would generally just give her medication for swelling, which would only last for four or five days, but they refused to take x-rays of her knee (Tr. 16-17). The only treatment Plaintiff received besides the emergency room treatment was at Dodson Health Clinic, and she could not fill the prescriptions given to her there (Tr. 17).

2

Plaintiff testified as to her recent trip to University Orthopaedic Associates and the MRI that had been performed only a few days prior to the hearing (Tr. 17-18). Plaintiff stated she was going to follow up with the doctor at University Orthopaedic Associates to review her results, and he had told her she would need surgery due to osteomyelitis and draining on the inside of her knee (Tr. 18). Plaintiff testified her pain was constant; it moved down to her feet, and when she stood up sometimes her knee would give out, which is why she had fallen three times in the past (Tr. 20). Plaintiff testified she could sit for 30 to 40 minutes before the pain would travel to her foot, and she would have to elevate her foot (Tr. 20). Plaintiff sometimes wore a brace to bed to keep her leg still, but it did not help much with the pain (Tr. 20-21).

Plaintiff received food stamps and financial support from some of her family members (Tr. 14). Plaintiff's sister would take her to the store to shop, but she stayed in the car and told her sister what she needed to get (Tr. 14-15).

Plaintiff's attorney asked the ALJ to keep the record open post-hearing to be able to submit Plaintiff's MRI results (Tr. 21). The ALJ stated that if the records came to him before he made the decision, he would consider them, but suggested that Plaintiff's attorney file a petition to reopen with a brief explaining why the MRI results might support an award of benefits (Tr. 21).

### B. Vocational Expert Testimony

The ALJ asked the vocational expert ("VE") to consider an individual with the restrictions set forth by the physician who reviewed Plaintiff's file, that is, occasionally lifting 20 pounds, frequently lifting 10 pounds, standing or walking for two hours in an eight-hour workday, sitting for six hours in an eight-hour workday, and no limitations as to pushing or pulling (Tr. 22). The VE testified that an individual with those characteristics would be able to perform a full range of sedentary work (Tr. 22).

C.  **Medical Records**

Records from 1997 show that Plaintiff had a tibial plateau fracture, and there was deformity in the left knee; a later scan showed healing fractures and a soft tissue drain (Tr. 233). There was no definite evidence of osteomyelitis (Tr. 233).

On May 19, 2008, Plaintiff had a scan of her knee at Parkridge Medical Center after falling; the scan showed a "[c]hronic architectural distortion of the bony trabeculae of the medial tibial condyle and tibial epiphysis proximally" which was consistent with old fractures (Tr. 204). Views of Plaintiff's left knee taken on January 29, 2009, after another fall, showed a possible old medial tibial plateau fracture, but the knee appeared stable when compared to the May 2008 exam (Tr. 203). Plaintiff presented to Erlanger Hospital again on February 3, 2009 complaining of a knee injury one week prior (Tr. 230-33).

Plaintiff presented to Erlanger Hospital on March 18, 2009 complaining of left knee pain after slipping and falling two weeks earlier (Tr. 197-202). Records from Dodson Health Clinic ("Dodson") on March 25, 2009 note that Plaintiff was following up after her visit to Erlanger Hospital; she reported being pushed down 32 steps in 1997 and having eight surgeries on her knee (Tr. 243). Plaintiff reported her knee "gave out" in May 2008 and again in January 2009 (Tr. 243). Plaintiff described it as a burning pain down her left leg and foot, and it was noted that she had extensive scarring on her knee and leg (Tr. 243). Plaintiff returned to Dodson on April 8, 2009 and stated she had no money to fill her prescriptions; she also sought a referral to an orthopedic specialist (Tr. 244).

On April 20, 2009, Dr. Thomas Mullady performed a consultative examination of Plaintiff (Tr. 245-46). Dr. Mullady noted a decreased range of motion in the left knee, a marked left leg limp,

4

marked scarring, and an absence of deep tendon reflexes (Tr. 246).

On April 28, 2009, Dr. James Moore filled out a physical residual functional capacity ("RFC") assessment form (Tr. 247-55), in which he opined Plaintiff could occasionally lift and/or carry up to 20 pounds, frequently lift and/or carry up to 10 pounds, stand and/or walk for at least two hours in an eight-hour workday, sit for six hours in an eight-hour workday, and push and/or pull with unlimited ability (Tr. 248). Plaintiff could never climb ladders, ropes or scaffolds but could occasionally climb stairs or ramps, balance, stoop, kneel, crouch, and crawl (Tr. 249). Dr. Moore noted that Plaintiff's statements were credible in the context of the medical findings (Tr. 254). Dr. Frank Pennington affirmed Dr. Moore's assessment on July 25, 2009 (Tr. 256).

Plaintiff was admitted to Erlanger Hospital on August 12, 2009 complaining of left knee pain after she had fallen and hurt her knee three weeks ago (Tr. 262-65). Plaintiff was seen at Erlanger Hospital again on December 4, 2009 complaining of a fall on November 23, 2009 (Tr. 271-77). Views of her left knee showed irregular lucencies and sclerosis within the proximal tibia which suggested osteomyelitis (Tr. 278).

Plaintiff presented to Erlanger Hospital again on April 15, 2010 complaining of left knee pain for the past two days after it "gave out"; she reported her knee was giving out periodically (Tr. 282-86). Plaintiff was referred to an orthopedic clinic for followup (Tr. 284). Plaintiff was seen by University Orthopaedic Associates on April 22, 2010 (Tr. 301-02). Dr. Shane Asbury noted upon examination that there were no obvious deformities to the knee and bony tissue, but there were several scars and skin grafts on Plaintiff's left leg and knee (Tr. 302). Dr. Asbury noted that views of the knee demonstrated enchondromas and a radiopaque wire which was loosened open and appeared to be a cerclage wire from her patella (Tr. 302). Plaintiff's proximal tibia had a lytic defect

5

with collapse on the lateral surface with sclerosis (Tr. 302). Dr. Asbury's impression was that there was questionable osteomyelitis in Plaintiff's left proximal tibia, and he ordered an MRI (Tr. 302).

Plaintiff had an MRI of her knee on May 1, 2010, which was compared to radiographs from December 4, 2009 (Tr. 296-97). The MRI revealed abnormalities in the knee, an old fracture of the left tibial plateau, and posttraumatic degenerative arthritic changes (Tr. 296). The impressions were an old impacted tibia plateau fracture with posttraumatic arthritic changes and bone infarcts, with no acute bony abnormalities, joint effusion, or soft tissue edema (Tr. 296).

### III. ALJ'S FINDINGS

#### A. Eligibility for Disability Benefits

The Social Security Administration determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). That process provides:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment-i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities-the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647 (6th Cir. 2009). The claimant bears the burden to show the extent of his or her impairments, but at step five, the Commissioner bears the burden to

show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

### B. ALJ's Application of the Sequential Evaluation Process

At step one of the sequential evaluation process, the ALJ found Plaintiff had not engaged in any substantial gainful activity since July 18, 2008, the alleged onset date (Tr. 30). At step two, the ALJ found Plaintiff had the following severe impairment: history of left knee fracture, postoperative status (Tr. 30). The ALJ noted the impairment was severe because it caused significant limitations on the claimant's ability to perform basic work activities (Tr. 30). At step three, the ALJ found Plaintiff did not have any impairment or combination of impairments to meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App'x. 1 (Tr. 30-31). The ALJ noted that he considered all listings relevant to Plaintiff's impairments, including listing 1.00 (Tr. 31). The ALJ determined Plaintiff had the RFC to perform a full range of sedentary work (Tr. 31). At step four, the ALJ found Plaintiff was unable to perform her past relevant work (Tr. 32). At step five, the ALJ noted Plaintiff was age 41, a younger individual, as of the disability onset date (Tr. 32). After considering Plaintiff's age, education, work experience, and RFC, the ALJ found there were jobs that existed in significant numbers in the national economy which Plaintiff could perform (Tr. 32). This finding led to the ALJ's determination that Plaintiff was not under a disability as of July 18, 2008 (Tr. 33).

### IV. ANALYSIS

Plaintiff's primary argument concerns the ALJ's failure to consider or discuss the MRI result provided post-hearing. Plaintiff argues the MRI result is new evidence that should have been considered because the potential diagnosis of osteomyelitis is material to her claim, and Plaintiff

7

argues the ALJ's failure to discuss the evidence means he did not base his decision on the record as a whole.

A.   **Standard of Review**

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Walters*, 127 F.3d at 528). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Id.* (internal quotes omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no

8

obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sep. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claim of error without further argument or authority may be considered waived).

### B. Post-Hearing Submission of MRI Result

Plaintiff argues that the new medical records include a more thorough examination of Plaintiff and include a potential diagnosis of osteomyelitis to explain Plaintiff's condition and complaints of pain [Doc. 14 at PageID#: 53]. Plaintiff argues these records could have produced a different outcome in the ALJ's decision [*id.*]. Plaintiff further argues that the ALJ's failure to consider the records or mention them in his decision means that he could not have based the decision on the record as a whole, and the case should be remanded so the ALJ can consider the entire record [*id.* at PageID#: 53-54].

The Commissioner argues in response that the evidence is not material because the orthopedic records show only a potential diagnosis of osteomyelitis and the MRI did not reveal osteomyelitis [Doc. 16 at PageID#: 63]. Furthermore, the Commissioner argues that Plaintiff's impairment is only relevant as it pertains to her ability to work, and the mere diagnosis of osteomyelitis does not indicate the severity of the condition, as she could still be able to perform sedentary work [*id.*]. The Commissioner points to Dr. Mullady's assessment, which imposed no other restrictions on Plaintiff, as support for the ALJ's RFC finding [*id.* at PageID#: 64]. The

9

Commissioner notes that it does not appear the evidence was before the ALJ at the time he made his decision, but argues it would not have changed the outcome in any event [*id.*]. In addition, the Commissioner notes that because the evidence was not before the ALJ, it was new evidence submitted to the Appeals Council, which considered it but did not find a basis for changing the ALJ's decision [*id.* at PageID#: 64-65]. The Commissioner argues remand would serve no purpose because it would not change the ALJ's findings, and contends substantial evidence supports the ALJ's decision [*id.* at PageID#: 65].

Evidence submitted to the court after the close of administrative proceedings cannot be considered for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Similarly, where the claimant presents new evidence to the Appeals Council, but the Appeals Council declines to review the ALJ's decision, that new evidence may not be considered during review on the merits. *Cotton v. Sullivan*, 2 F.3d 692, 695-96 (6th Cir. 1993). Instead, the new evidence can be considered only for purposes of remand pursuant to sentence six of 42 U.S.C. § 405(g), which authorizes the court to remand a case for further administrative proceedings "if the claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding." *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). The evidence is material "only if there is a 'reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence.'" *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010) (quoting *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001)); *see also Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007) ("Material evidence is evidence that would likely change the Commissioner's decision").

The list of exhibits to the ALJ's decision does not include the records from University

10

Orthopaedic Associates or the test results from May 1, 2010 (Tr. 34-36), and it appears this evidence was not considered by the ALJ even though Plaintiff submitted the evidence by letter dated May 14, 2010 (Tr. 293-305).[1] Under these circumstances, the necessary consideration for remand is whether the evidence is new and material and if there is good cause for not presenting the evidence earlier.

I **FIND** there was good cause for not presenting the evidence earlier because the MRI was performed only a couple of days prior to the ALJ's hearing, and the records could not be obtained in time for the hearing. In addition, there was no lack of diligence in obtaining the records and attempting to place them before the ALJ. Because the records were not available at the time of the hearing, I also **FIND** the evidence was new.

The remaining issue is whether the evidence is material. I **FIND** the new evidence is not material because it does not create a reasonable probability that the outcome of Plaintiff's claim would differ on remand. Dr. Asbury's impression of questionable osteomyelitis in these records was not confirmed by the MRI and remains merely a possible diagnosis. In addition, as the Commissioner argues, the diagnosis of osteomyelitis would not lead to a finding of disability until the severity of the condition was such that it would prevent Plaintiff from performing even sedentary work. In the record at the time of the ALJ's decision, there was no treating physician opinion restricting Plaintiff from work, and Dr. Moore's assessment addressed the scant medical evidence in the record at the time to find that Plaintiff could at least perform sedentary work. The potential

---

[1] Although Plaintiff essentially argues that the ALJ unreasonably refused to keep the record open, there is no indication that Plaintiff's attorney did as the ALJ suggested by filing a petition to reopen the record. The evidence was, however, considered by the Appeals Council (Tr. 4).

diagnosis of osteomyelitis, without more, is not likely to have changed the ALJ's decision.[2]  I

**CONCLUDE** Plaintiff has not established that the new evidence is material such that a sentence six

remand is appropriate.  Accordingly, I also **CONCLUDE** the decision of the ALJ was supported by

substantial evidence.

## V. CONCLUSION

Having carefully reviewed the administrative record and the parties' arguments, I

**RECOMMEND** that:[3]

> (1) Plaintiff's motion for judgment on the pleadings [Doc. 13] be **DENIED**.
>
> (2) The Commissioner's motion for summary judgment [Doc. 15] be **GRANTED**.
>
> (3) The Commissioner's decision denying benefits be **AFFIRMED**.

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[2]  In addition, the Appeals Council considered the new evidence and did not disturb the ALJ's decision.

[3]  Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party.  Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure.  Failure to file objections within the time specified waives the right to appeal the district court's order.  *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985).  The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general.  *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986).  Only specific objections are reserved for appellate review.  *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

12

Case 1:11-cv-00211-HSM-SKL   Document 17   Filed 06/05/12   Page 12 of 12   PageID #: 79